Sontchi, J.
INTRODUCTION
Before the Court is the defendants' (the "Defendants") motion to dismiss (the "Motion to Dismiss") Counts X-XII, XIV-XVIII in the above captioned adversary action for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court grants, in part, the Defendants Motion to Dismiss. Specifically the Court holds the following:
1. The Court grants the Motion to Dismiss the preferential transfer claims in Count XIV because the Trustee has failed to identify sufficiently the specific Debtor who is making the transfer in violation of the Twombly and Iqbal pleading standards as interpreted by the Court.
2. The Court grants the Motion to Dismiss the fiduciary breach claims in Count XV because the Trustee has failed to allege sufficiently Defendants owed fiduciary duties to the Debtors or breached said duties if they did owe them.
3. The Court dismisses with prejudice the breach of fiduciary duty claim in Count XVI because it is a futile claim.
4. The Court grants the Motion to Dismiss the accounting claims in Count XVII because before the Court grants a request for an accounting, the Trustee must establish that there was a breach of fiduciary duty, which he has not.
*450 5. The Court grants the Motion to Dismiss the claim for a disallowance of claims in Count XVIII because the Trustee has failed to attain a judicial determination on the Complaint which is a prerequisite to a claim for disallowance.
Conversely, the Court denies, in part, the Defendants' Motion to Dismiss the constructive fraudulent transfer claims and actual fraudulent transfer claims in Counts X-XII because the Trustee has met the Twombly and Iqbal pleading standards.
JURISDICTION
The United States Bankruptcy Court for the District of Delaware (the "Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (F), and (H).[2] The Court has the judicial authority to enter final judgements and orders in this adversary proceeding.
Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409(a) because this is a proceeding relating to and arising under Title 11 of the United States Code, 11 U.S.C. §§ 101 - 1532 and the above-captioned chapter 7 case. This action is brought as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure, Rule 7001.
STATEMENT OF FACTS
1. Procedural Background
On May 9, 2015 (the "Petition Date"), Pennysaver USA Publishing, LLC filed a voluntary petition for relief under Chapter 7 of the U.S. Bankruptcy Code.[3] The Court subsequently entered an order providing for the joint administration of the Debtors' cases consolidating PennySaver USA, LLC, PennySaver USA Publishing, LLC, PennySaver USA Printing, LLC, Orbiter Properties, LLC, and Monthly Mailer, LLC (collectively the "Debtors") for procedural purposes.[4] The Office of the United States Trustee appointed Don A. Beskrone as the interim Chapter 7 Trustee of the Debtors' cases.[5] Mr. Beskrone now serves as the trustee (the "Trustee") in these cases according to 11 U.S.C. § 702(d).
2. Factual Background
The Debtors are Delaware limited liability companies.[6] The other three non-Debtor Delaware LLCs at issue are PennySaver Investors, LLC ("Investors"), OpenGate Capital Group, LLC ("Capital"), and OpenGate Capital Management, LLC, ("Management" together with Investors and *451 Capital "OpenGate").[7] Throughout the Complaint, the Trustee uses the term "OpenGate" to refer to a single entity and fails to distinguish between Capital, Management, and Investors.[8]
The Trustee alleges the following relationship between the LLCs at issue. Management and Capital directly managed Investors.[9] Capital owned 98% of Investors' equity.[10] Investors owned, directly or indirectly, the Debtors.[11] Specifically, Investors was the sole member and manager of Debtor PennySaver USA, LLC.[12] Management, Capital, and Investors are indistinct as a matter of day-to-day control.[13] The OpenGate group acquired the Debtors on September 27, 2013.[14]
1. Defendants
The Trustee alleges the positions that the Defendants held as employees in one or more of the OpenGate entities, although he fails to specify which of the OpenGate entities: Capital, Management, or Investors, actually employed the Defendants.[15] Additionally, the Trustee alleges that all instructions as to the operations of the Debtors came from persons publicly identified as having been employed by Capital. Yet, the Trustee fails to identify whether the Defendants are publicly identified as Capital employees. Lastly, the Trustee alleges that OpenGate together with "Nikou, Yook and OpenGate's other senior managers " orchestrated a coordinated effort to drain the Debtors of their cash.[16]
2. Fiduciary Duty
In the Complaint, the Trustee alleges that Defendants caused the Debtors to make a series of fraudulent transfers from the Debtors to OpenGate, OpenGate's affiliates and employees, or persons to whom OpenGate owed money.[17] Additionally, the Trustee alleges that each of the Defendants exercised control over the Debtors' management from time to time. However, aside from Defendant Thornton, the Defendants are never identified by name in allegations governing the direction or authorization of allegedly fraudulent transfers except as recipients of salary payments. Even when the Defendants, including Thornton, are identified by name, there are no allegations that they personally authorized any of the allegedly fraudulent transfers, including their salaries.[18] Instead, the term "OpenGate" is used to describe the entity that is causing the majority of the transfers.[19] The only transfer the Trustee does not entirely contribute to the OpenGate entities is attributed to both non-Defendant Joy Yook and OpenGate.[20] The Trustee alleges that Defendant *452 Thornton, specifically, was aware of all of the money transferred from the Debtors to OpenGate and kept a record it.[21]
The Complaint alleges that the Defendants owed fiduciary duties to the Debtors and breached those duties by facilitating all of the allegedly fraudulent transfers. The Complaint does not detail Defendants' positions within the Debtors' LLCs nor does it detail how Defendants facilitated the transfers. The Trustee fails to allege that Defendants are members or managers of the Debtors under any of the Debtors' LLC agreements. The Trustee has also failed to allege that the Defendants owe fiduciary duties to the Debtors as outlined in any of the Debtors LLC agreements. The Defendants and the Trustee have stated that there are LLC agreements, but neither side has produced them for the review of the Court.
The Trustee alleges that for each of the allegedly fraudulent transfers listed below, Debtors were insolvent or rendered insolvent by the transfer and received no value or consideration therefrom.[22] The seven alleged fraudulent transfers are alleged below.
a. The Closing Expenses and the Distribution
The Trustee alleges that OpenGate forced the Debtors to pay approximately $868,000 in closing expenses and that this payment constitutes a fraudulent transfer.[23] The Trustee also alleges that the Debtors made these transfers for the sole benefit of OpenGate.[24] The Trustee alleges that OpenGate shortly after acquiring the Debtors caused the Debtors to pay out a distribution of $2,000,000 to Capital.[25]
b. The Tax Payment
The Trustee alleges that approximately seven months after the acquisition OpenGate caused the Debtors to distribute $1,803,516.00 to itself for alleged tax obligations.[26] The Trustee further alleges that the tax payment was a distribution or transfer of an interest in the Debtors property, made to or for the benefit of OpenGate.[27]
c. The Monthly Management Fee
Shortly acquiring the Debtors, OpenGate caused one or more of the Debtors to enter into a management agreement with OpenGate.[28] However, OpenGate did not provide the Debtors with any management services.[29] The Trustee includes an exhibit detailing the date the Debtors made each monthly payment for a total of $1,249,999.95 payments were made.[30]
d. The Salary Payments
In addition to the breach of fiduciary duty claims, the fraudulent and preferential transfer claims rely on the facts set out *453 in the Salary Payments section herein. The Trustee alleges that the Debtors designated the Defendants as "OpenGate Employee[s]"[31] And that the Debtors paid the Defendants generous salaries commencing until the month before the bankruptcy filings.[32] The Trustee also alleges that the Debtors were forced to pay bonuses to the Defendants when they had insufficient funds to give their own staff bonuses.[33] The Trustee alleges that not one of the Defendants performed any amount of material services nor provided any material value to the Debtors in exchange for the salaries they received.[34] The Trustee breaks these payments down in detail showing the dates and amounts the Debtors transferred funds to the Defendants.[35] These payments occurred within two years of the Petition Date.[36]
e. The Fusion Fee and Cover-up
OpenGate directed the Debtors to provide a thirty-day loan to an OpenGate portfolio company under the guise of a "business agreement" even though a loan would violate the Debtors' debt covenants-a fact that OpenGate's counsel pointed out.[37]
Jay Yook, a partner of one of the OpenGate entities, was the one who instructed the Debtors to make the loan.[38] OpenGate created a new history to rebrand the business agreement as a "sublease."[39] Thornton gave the Debtors' VP of Finance detailed instructions to invent this new history.[40]
f. The IT Payment
The Trustee alleges that OpenGate told the Debtors to pay a $7500/month IT consulting fee to an OpenGate employee.[41] The payments were made directly to OpenGate.[42] The Trustee alleges that the OpenGate employee performed little or no IT services for the Debtors, but did perform them for OpenGate.[43]
g. Insolvency
The Trustee alleges that the Defendants were insolvent or rendered insolvent because *454 of or before the occurrence of each of the allegedly fraudulent transfers.[44] Specifically, the Trustee alleges that the Debtors were insolvent from the day OpenGate acquired them, and became increasingly insolvent until they declared bankruptcy eighteen months later and that the Defendants were fully aware of that fact.[45] The Trustee describes the Debtors' declining financial performance and even alleges that the valuation mechanism OpenGate used to value the Debtors' LLCs overestimated the value of the insolvent company.[46] Additionally, the Trustee alleges that the book value of the Debtors' working capital and equipment was excessively high resulting in a liquidation value for the Debtors' LLCs that was less than the amount of their debt.[47] The Defendants do not dispute that the Debtors were insolvent from day one.
The Trustee alleges that the Debtors' entered into a loan agreement with Capital One Business Credit Corp. secured with substantially all of their assets.[48] And that Investors guaranteed the loan.[49] The Trustee fails to allege whether Capital One Business Credit Corp. or any other creditors are assignees or members of the Debtors' LLCs.
ANALYSIS
3. Legal Standard for Motion to Dismiss under Fed. R. Civ. Pro. 12(b)(6)
The Defendants filed a Motion to Dismiss all claims in Counts X-XII and XIV-XVIII of the Complaint under Fed. R. Civ. Pro. 12(b)(6).[50] Fed. R. Civ. Pro. 12(b)(6) requires the Trustee to state a plausible claim for relief.[51] A plausible claim exists when the plaintiff pleads sufficient facts allowing the court to reasonably infer that the defendant is liable for the misconduct alleged.[52] Recitations of elements of a cause of action, legal conclusions, and bare assertions of wrongdoing will not alone suffice to state a plausible claim.[53] The plausibility determination requires a context-specific analysis where the court must draw on its judicial experience and common sense.[54]
The Third Circuit instructs courts to follow a two-step analysis. First, they must separate factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true while disregarding any legal conclusions. Second, they must determine whether the facts alleged in the complaint are sufficient to show a plaintiff has a plausible claim for relief.[55] The relevant record for this analysis includes the complaint and any document integral or explicitly relied upon in the complaint.[56]
*455 4. Claims X-XII for Failure to State a Claim for Avoidance of Fraudulent Transfer under 11 U.S.C §§ 548(a)(1)(B), 544(b), 550, DEL. CODE tit. 6, §§ 1304(a) and 1307 ; and CAL. CIV. CODE §§ 3439.05 and 3439.07
The Trustee asks for an avoidance of the Salary Payments the Debtors made to Defendants as alleged fraudulent transfers. The Trustee casts a wide net in making these claims arguing that they are fraudulent transfer claims under § 548, including actual fraudulent transfers, constructive fraudulent transfers as well as Delaware and California state law claims against the Defendants. California and Delaware have both adopted the UFTA, rendering the elements for the State and Federal law claims essentially the same, with the main difference that under the state law claims the lookback period extends to four years.[57] For all other purposes, the state and federal law claims are identical.[58] The Defendants dispute that the Trustee has adequately pleaded all elements of 11 U.S.C. §§ 548(a)(1)(A), § 548(a)(1)(B), Delaware Code Section § 1304(a)(2)(a), and Cal. Civil Code § 3439.04(a)(2)(A).
The Trustee alleges that the Debtors received less than reasonably equivalent value in exchange for the Salary Payments made to the Defendants.[59] The Trustee alleges that on the dates the Debtors transferred assets, the Debtors were either 1) insolvent, or rendered insolvent; 2) had an unreasonably small amount of capital for any business transaction they were engaged in or were about to be engaged in; or 3) intended to incur debts that would be beyond the ability of the Debtors to pay as such debts matured.[60]
The Defendants argue that both actual and constructive fraudulent transfer claims are subject to Fed. R. Civ. Pro. 9(b)'s particularity requirements and that the facts alleged do not sufficiently support a plausible inference that the Debtors received less than reasonably equivalent value in exchange for the allegedly fraudulent transfers. Furthermore, the Defendants argue that the Trustee must defeat a presumption of reasonable equivalent value when it comes to the payment of salaries, that the Trustee has no standing to sue under 544(b), and that the Trustee has failed to meet the pleading standard required by Twombly and Iqbal because the Trustee has failed to identify which of the Debtors was the entity to actually transfer funds to the Defendants. Instead, the Defendants argue that the Trustee has simply used the term "Debtors" as if that term satisfies Fed. R. Civ. P. 9(b)'s pleading standard. The Court first examines which pleading standard is appropriate here, and then the elements that constitute constructive and actual fraudulent transfers as necessary.
1. Legal Standard for Pleading Constructive Fraud
This Court evaluates claims of constructive fraud under the notice pleading *456 standard of Fed. R. Civ. Pro. 8(a)(2).[61] At the motion to dismiss stage, to plead adequately a constructive fraud claim "all that is needed ... is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent."[62] The Trustee must do more than merely recite statutory elements, but needs only to state facts with sufficient particularity to provide the defendant with fair notice of the charges against him.[63] Thus, complaints that identify the dates, amounts, source, and transferee of each of the alleged transfers successfully support claims of constructive fraudulent transfer under Fed. R. Civ. Pro. 8(a)(2)'s pleading standard.[64]
Section 548(a)(1)(B) governs claims for constructively fraudulent transfers. It requires the Trustee to allege that:
(i) the transfers were made within two years of the petition date;
(ii) the debtor received less than reasonably equivalent value in exchange of the transfers; and
(iii) the debtor either (a) was insolvent on the date that the transfers were made or became insolvent as a result of the transfers; or (b) was or was about to engage in a business or transaction for which any remaining property remaining with the debtor was an unreasonably small capital; or (c) intended or believed that the debtor would incur debts beyond the debtor's ability to pay; or (d) the debtor made the transfer or incurred the obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.[65]
Reasonably equivalent value and insolvency are generally factual determinations that should be reserved for discovery.[66] So long as "the Trustee has identified *457 the transfer by date and face amount and has alleged that it was for no consideration," the actual amount need not be scrutinized.[67] Courts liberally review constructive fraud claims brought by a trustee, given his position as a third party outsider to the debtor's transactions.[68]
The same analysis applies to the Trustee's Delaware and California law constructive fraudulent transfer claims.[69] Section 544(b)"permits the trustee to step into the shoes of an existing unsecured creditor who could have avoided an action under state law."[70] At the pleading stage, the Trustee does not need to allege the existence of or name an unsecured creditor, and may claim avoidance of any transfers incurred by the debtor under "applicable law."[71]
Section 1304(a)(2) of the Delaware Code and Section 3439.04(a) of the California Civil Code are that applicable law, and they govern fraudulent transfers as to present and future creditors. The elements to state a claim for fraudulent transfers under both of these laws are identical and mirror the elements required to state a claim for constructive fraud under Section 548(a)(1)(B).[72] They require that a debtor made a transfer 1) without receiving reasonably equivalent value in exchange; and 2) engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small.[73] The same pleading standards used to evaluate § 548(a)(1)(B) applies to evaluating the Delaware and California law equivalents.[74] As this Court has noted, "The elements for avoidance of a fraudulent conveyance under Delaware law are essentially identical to those of section 548(a)(1)(B)," and this Court has grouped the analysis given the language of both statutes.[75]
*458 2. Less than Reasonably Equivalent Value in Exchange for the Transfers
The Trustee, consistent with case law, has identified the date, amounts, and transferee of each transfer. However, it is not clear which of the "Debtors" made the transfer, though it is clear that "the Debtors" made each of the allegedly fraudulent transfers.
The Defendants argue that unless the source is made clear, the constructive fraudulent transfer claim is invalid. But by naming each transferee and the exact amount they received per transfer, the Trustee has given each Defendant fair notice. And he has explicitly alleged that the Debtors received less than reasonably equivalent value in exchange for the assets transferred to each Defendant.[76] Defendants argue that the Trustee must overcome the presumption that salary payments are "reasonably equivalent value."[77] The Defendants cite to three cases to support this claim, but not one of these cases applies the necessary pleading standard for a motion to dismiss. This distinction is essential because disputes over reasonably equivalent value are not appropriate for determination on a motion to dismiss.[78] Rather, they are issues to be addressed in the discovery process.
The Defendants also argue that the Court should reject the conclusory allegations that the Debtors received nothing in return for the Defendants' salary payments as violations of the pleading standard. Yet again, the Defendants have misinterpreted the two cases they cite.
In In re AgFeed , the Court relies on the fact that the complaint alleges that the transfers were made by "[AFI] and related entities or by entities with a business relationship to [AFI]" to conclude that the Complaint failed to meet the particularity requirements of Fed. R. Civ. Pro. 9(b).[79] But, unlike the generalized pleading in AgFeed , the Trustee identifies explicitly that every Debtor corporation here is filing for bankruptcy jointly, and does not allege any third-party entities to have made the transfers. The Trustee's complaint does not suffer from the overall vagueness of the complaint in Ag F eed .
In In re Pitt Penn Holding Co. , the complaint was found insufficient because it did not identify an avoidable transfer because the complaint failed to identify the defendant's compensation.[80] Instead, the complaint stated only that the defendant was paid "far more than justified."[81] In the case at hand, however, the Trustee has sufficiently stated the specific amount each Defendant received, the dates they received the amounts, and that the made the salary payments for no material benefit.
The Trustee's Complaint has sufficiently pled that the Defendants were not paid a reasonable equivalent value for their services or lack of services.
*459 3. Insolvency
The Trustee alleges that the Debtors were either insolvent, or rendered insolvent; were engaged in business or transaction, or were about to engage in such business or transaction, for which any property remaining with the Debtors was an unreasonably small amount of capital; or intended to incur debts that would be beyond the ability of the Debtors to pay as such debts matured because the Debtors were insolvent from day one.[82] He describes the Debtors' declining financial performance and loan obligations.[83] The Defendants do not argue that the Trustee has failed to adequately plead the Debtors' insolvency. Insolvency is best left to discovery to determine and should not generally be decided on a motion to dismiss.[84] This is because the determination of insolvency is highly fact-specific and "should be based on seasonable appraisals or expert testimony."[85] A motion to dismiss is not the proper place to bring in experts to determine insolvency.
The Court denies the constructive fraudulent transfer claims in Counts X-XII because the Trustee has met the pleading requirements and has given the Defendants fair notice.
4. Legal Standard for Pleading Actual Fraud
Section 548(a)(1)(A) governs Federal claims for actual fraudulent transfers. It requires the Trustee to allege that:
(i) The transfers were made within 2 years before the petition date.
(ii) The debtor voluntarily or involuntarily made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.
California's Section 3439.04(a)(1) and Delaware's Section 1304(a)(1) hold the same requirements as § 548 (a)(1)(A).[86] The pleading requirements for both the state and federal claims are identical.[87] The difference between the federal and state transfer claims is that the state transfer claims have statutory provisions of elements the Court can consider in evaluating actual intent.[88] These same statutory elements are incorporated through case law into § 548 in the form of "badges of fraud."[89] Thus, in evaluating the actual fraud allegations, this Court need only evaluate the elements of § 548 as the elements for the state transfer claims are substantially the same.
This Court evaluates claims of actual fraud under the notice pleading standard of Fed. R. Civ. Pro. 9(b).[90]
*460 Fed. R. Civ. Pro. 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. This is done to put defendants on notice of the precise misconduct with which they are charged.[91] "But 'in the bankruptcy context, Rule 9(b) should be interpreted liberally, particularly when the trustee...is bringing the action.' "[92] Under this standard, to plead adequately a constructive fraud claim the Trustee uses "badges of fraud" to allege fraudulent intent. These badges can include, but are not limited to:
(i) The relationship between the debtor and the transferee;
(ii) Consideration for the conveyance;
(iii) Insolvency or indebtedness of the debtors;
(iv) How much of the debtor's estate was transferred;
(v) Reservation of benefits, control or dominion by the debtor over the property transferred; and
(vi) Secrecy or concealment of the transaction.[93]
The presence or absence of any single badge of fraud is not conclusive. 'The proper inquiry is whether the badges of fraud are present, not whether some factors are absent. Although the presence of a single ... badge of fraud may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud.' Additionally, a court may consider other factors relevant to the transaction.[94]
The Trustee must allege that the timing of the transfers occurred within two years before the petition date, that the Debtors were indebted, and voluntarily or involuntarily made the alleged transfer with the actual intent to deceive those to whom they were indebted.
The transfers in question are the salary payment transfers. The allowable date range to bring this claim extends from May 29, 2013, to May 29, 2015. The salary payments all fall within this range. The Defendants do not argue this point.
The meat of the analysis concerns whether the Debtors voluntarily or involuntarily conducted these Salary Payments with the intent to defraud an entity to whom they were indebted. The Trustee sufficiently pleads that the Debtors' were indebted to Capital One Business Credit Corp.[95] The Defendants do not argue this point. The Defendants and the Trustee disagree as to whether the Trustee has sufficiently pled "actual intent" under Fed. R. Civ. Pro. 9(b)'s particularity requirements.
*461 This requires an analysis of the badges of fraud.
The first badge of fraud is the relationship between the debtors and the transferee. The Trustee alleges that the transferees controlled the Debtors management from time to time. This is a conclusory statement and needs to be backed by factual allegations. The Trustee supports this statement with allegations that Defendant Thornton allegedly directed the Debtors' VP of Finance to rewrite the history of a loan from the Debtors' to an affiliate of OpenGate to make it seem like it was not, in fact, a loan and knew of all the transfers the Debtors made to OpenGate and its affiliates. As to Defendant Thornton, this badge of fraud may have been sufficiently alleged. But as to the remaining Defendants, this badge of fraud has not been sufficiently alleged.
The second badge of fraud is consideration in exchange for the conveyance. The Trustee has alleged sufficiently that there was no consideration given in exchange for the Defendants' salaries. The third badge of fraud is the insolvency of the Debtors. The Trustee has alleged sufficiently the Debtors' insolvency.
The fourth badge of fraud is how much of the Debtors' estate was transferred. The Trustee alleges the specific dollar amount and that the amount was more than the Debtor could bear. The Trustee alleges that the Debtors were unable to give their own staff bonuses but were still required to pay the Defendants bonuses.[96] The Trustee has pled this badge of fraud. Though the Trustee does not allege what percentage of the Debtors' estate was transferred, he alleges sufficiently that the amount was most likely more than the Debtors could afford.
The fifth badge of fraud is that the Debtor reserved control of the property after it was transferred. This did not occur here. The sixth badge of fraud is secrecy or concealment of the transfer. There was no alleged secrecy involved in the Salary Payments.
The Trustee alleged sufficiently three out of the six badges of fraud. "The confluence of several [badges of fraud] in one transaction generally provides conclusive evidence of an actual intent to defraud."[97] Thus, the Trustee has alleged sufficiently both state and federal actual transfer claims.
5. Claim XIV for Failure to State a Claim for Avoidance of Federal Preferential Transfer under 11 U.S.C. §§ 547(b) and 550(a)
The Trustee seeks judgment against the Defendants to avoid and to recover certain salary payments as alleged preferential transfers. In their Motion to Dismiss, the Defendants argue that the Complaint does not identify the nature and amount of any "antecedent debts" underlying the challenged transfers, and consequently the Trustee has not made a plausible claim that the transfers occurred for or on account of an antecedent debt.[98]
The Defendants also argue that the Trustee fails to identify which of the Debtors was involved in the alleged transfers and that the Complaint inconsistently alleges that the Defendants both directed and controlled Debtors' management from time to time, but also were paid for "no material contribution."[99] The Trustee *462 counters that the claims are not inconsistent.[100]
1. Legal Standard for Federal Preferential Transfers
To survive a motion to dismiss, the Delaware Bankruptcy Court has held that "the following information must be included in a complaint to avoid preferential transfers in order to survive a motion to dismiss: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date [of the transfer], (ii) name of the debtor/transferor, (iii) name of the transferee and (iv) the amount of the transfer."[101]
This Court requires Trustee to identify the particular Debtor making the preferential transfer where there are multiple Debtors involved in the case.[102] If the Trustee does not meet the pleading requirements established by this Court's case law, then the motion to dismiss can be granted without the examination of the statutory elements.[103]
Because the Trustee has failed to "identify the transferor precisely by name," it is also unnecessary to examine the statutory requirements.[104] Thus, there is no need to examine the alleged insider status of the Defendants or the amount and nature of the alleged antecedent debts. The fact that the exact identity of the Debtor transferor was not alleged is sufficient grounds to dismiss this claim.
The Court grants the motion to dismiss all claims in Count XIV.
6. Claim XV-XVI for Failure to State a Claim for Breach of Fiduciary Duties to the Debtor
The Trustee claims that the Defendants breached fiduciary duties of good *463 faith and fair dealing, loyalty, and care owed to the Debtors' LLCs and the creditors of the Debtors' LLCs by knowingly and willingly causing the Debtors to make a series of allegedly fraudulent transfers.[105] The Defendants respond that the Trustee failed to allege sufficient facts to support a plausible claim that the Defendants owed, or breached if they did owe, any duty to the Debtors or their creditors.[106]
The Defendants contend that only managers and controlling members of LLCs owe fiduciary duties and that the Trustee has failed to support a plausible claim that the Defendants were members, managers, officers, or directors of the Debtors' LLCs. Defendants next argue that even if they did owe a fiduciary duty to the Debtors' LLCs, the Complaint does not allege facts indicating that the Defendants caused the management of the Debtors' LLC to breach that duty because it fails to allege the specific relationship between the individual Defendants and the Debtors' management.[107] Finally, Defendants argue that the Complaint's assertion of a breach of fiduciary duties owed to the Debtors' creditors is improper because creditors are not owed fiduciary duties, and consequently, do not have standing to assert those claims.
The Trustee contends that the Defendants did owe fiduciary duties to the Debtors and the Debtors' creditors because they collectively and individually facilitated the numerous allegedly fraudulent transfers to the detriment of both the Debtors and the Debtors' creditors.[108] The Court considers the Defendants' fiduciary duties owed to the Debtors and Debtors' creditors in turn.
1. Legal Standard for a Breach of Fiduciary Duty Owed to a Debtor
The Complaint fails to allege under which law the breach of fiduciary duty claims should be analyzed. The Defendants argue that because the Trustee in a previous Court document has stated that the Debtors are all LLCs organized under Delaware law that the internal affairs doctrine should apply.[109] The Trustee fails to argue otherwise.
The Debtors are organized into LLCs under Delaware law.[110] Under the internal affairs doctrine, the state in which an LLC is organized is the only state that should typically hear matters concerning an LLC's internal affairs. Because breach of fiduciary duty claims are matters relating to an LLC's internal affairs, Delaware law governs these claims.[111]
To survive a motion to dismiss, the Trustee's Complaint must plead sufficient facts to support a plausible claim of both (1) the existence of a fiduciary duty, *464 and (2) that the fiduciary breached that duty.[112] If there is no existing fiduciary duty, then the claim fails, and there is no need to examine whether a fiduciary breached a duty.
There are three ways fiduciary duties can be established. Primarily, fiduciary duties in LLCs are governed by the limited liability company agreement.[113] In the absence of an LLC agreement or where the LLC agreement is silent, the Delaware Chancery Court has found consistently a default rule that the manager or director of the LLC owes fiduciary duties to fellow LLC members and the LLC.[114] Finally, in rare and highly fact-specific instances, a fiduciary duty of loyalty has been found if the defendant had actual control over an LLC which control was not granted under the LLC agreement.[115] " '[T]he bare conclusory allegation that a [defendant] possessed control is insufficient. Rather, the Complaint must contain well-pled facts' showing that the alleged controller 'exercised actual domination and control' over the subject entity or its directors...."[116]
The extension of fiduciary duties to non-directors, non-managers, and non-members is seemingly in conflict with Delaware LLC policy.[117] The Delaware Supreme Court has never established this third-party fiduciary duty, although the Delaware Chancery Court has consistently found this duty to exist.[118] The law originates from USACafes where a fiduciary duty absent from the LP agreement was found to exist because the defendant, a director of the general partnership, exercised actual domination and control over the limited partnership.[119] In Bay Center Apartments , the Delaware Court of Chancery again applied the third-party fiduciary duty theory to the Defendant but also emphasized the fact that the defendants failed to argue against the existence of that duty.[120]
*465 The Court of Chancery addressed what it means to control an LLC in Cargill, Inc. v. JWH Special Circumstance LLC .[121] Control over LLC1 was found where the parent LLC2 had made a binding contractual decision for LLC1, preventing it from protecting itself against unacceptable risks.[122] To further support the finding of control, the Court showed that there was employee overlap between the LLCs and that the employees of LLC1 were compensated by LLC2.[123]
The Trustee does not allege that the Defendants owed fiduciary duties to the Debtors under any limited liability agreement. The Defendants here are also not alleged to be managers of the Debtors' LLCs despite the existence of the LLC agreements, and, thus, have no default fiduciary duties either. The Trustee seeks to allege that the Defendants controlled the Debtors' LLCs because they allegedly helped to facilitate the Fraudulent Transfers and benefited specifically from the Salary Payments.
The allegations that the Defendants helped facilitate allegedly fraudulent transfers and benefited from one such transfer alone are insufficient to show that the Defendants exercised actual control over any of the Debtors' LLCs. In USACafes , Feeley , and Cargill the fact patterns are all significantly different than the one before the Court today. The Defendants are more similar to the shared employees in Cargill than they are to the managing member of an LLC or the director of a Limited Partnership because the Defendants are not alleged to be the managers of any LLC that owns any of the Debtors' LLCs but are instead employees that are shared between Debtors' LLCs and one of the OpenGate LLCs. The Trustee has failed to allege a comparable amount of control shared between the Defendants in this case and the defendants in the above cases.[124]
Even if the Trustee had established that the Defendants exercised control over the Debtor LLCs, the Complaint has failed to provide sufficient facts for the plausible inference that the Defendants caused the Fraudulent Transfers.
According to case law, the well-pled facts that a Trustee must set forth to show that the Defendants caused the Fraudulent Transfers include (1) the "specific facts as to which transactions a particular defendant authorized... (2) what authority a particular defendant had to approve such transactions" and (3) the Trustee must not lump defendants together "without supplying specific facts as to each defendant's *466 wrongdoings."[125] The failure to plead any one of these elements will result in the dismissal of the claim.
Yet the Trustee in the case at hand has failed to allege any of these things. The statements that do allege that Defendants controlled the Debtors fail because (1) the Trustee does not adequately distinguish the Defendants from one another and instead lumps them together as "OpenGate Employees" (2) the Trustee alleges positions held by the Defendants in OpenGate's organization but fails to identify which positions the Defendants held in the Debtors' organizations, (3) the Trustee does not specify which transfer any particular defendant authorized and (4) the Trustee does not specify under what authority within the Debtors' LLCs the Defendant acted to authorize the allegedly fraudulent transfers.
Because the Trustee fails to allege sufficiently that the Defendants exercised actual domination and control over the Debtors', the Trustee has failed to plead adequately that the Defendants owed a fiduciary duty to the Debtors, and there is no need to examine whether that, nonexistent, duty was breached.
The Trustee does allege specific facts that identify Defendant Thornton as the one who directed the Debtors' VP of finance to cover-up a loan from the Debtors' to Fusion and also as someone who knew and kept track of the total amount of the transfers that the Debtors were making to OpenGate and its affiliates. This allegation, however, is insufficient to show that Thornton exercised the necessary control over the Debtors to establish that she owed them a fiduciary duty. This is, in part, because the Trustee alleges specifically that it was non-Defendant Jay Yook who directed the Debtors to pay the Fusion Fee. The Trustee does not allege facts to show that Thornton, specifically, authorized the transfer, nor does the Trustee allege the specific position in the Debtors' organization that Thornton held which would have allowed her to control the Debtors' management. Because she did not owe a duty to the Debtors, she could not have breached a duty to the Debtors.
In conclusion, the Trustee has failed to adequately plead facts sufficient to show that the Defendants held positions within the Debtors' organization as fiduciaries. Even if there had been a fiduciary relationship established, the Trustee fails to allege sufficiently that the Defendants caused the Debtors to make the Fraudulent Transfers. If there is no fiduciary duty pled adequately, there can be no breach of that duty. The Motion to Dismiss Count XV is granted.
2. Fiduciary Duties Owed to the Creditors
The Trustee alleges that because the Defendants forced the Debtors to make the fraudulent transfers, they caused the creditors to sustain significant damages. And because the Debtors were insolvent at the time of the fraudulent transfers, the fiduciary duties the Defendants owed to the Debtors were expanded to the Debtors' creditors, and the Defendants breached those duties. The Defendants argue that creditors have no standing to assert a derivative breach of fiduciary duty claims against an LLC.
The Complaint fails to discuss whether the claim sought by the Trustee on behalf of the creditors is direct or derivative. Creditors cannot seek direct claims for breach of fiduciary duty against *467 LLCs and their officers or directors.[126] The claim must be derivative in nature. If the claim is derivative, it fails because derivative claims can only be brought by members or assignees of LLCs.[127]
Any confusion in the law is likely attributable to the fact that Delaware law treats corporations and LLCs differently. Delaware law, according to Gheewalla , permits creditors to bring derivative actions against corporations because when the Debtor is insolvent, the fiduciary duty owed to the shareholders is transferred to the creditors.[128] The creditors then have standing to sue the directors of the corporation for breaches of fiduciary duties.[129]
Creditors of an LLC have no standing to bring a derivative breach of fiduciary duty claim against an LLC even if it is insolvent.[130] This is primarily due to the language of the Delaware Limited Liability Company Act which states:
In a derivative action, the plaintiff must be a member or an assignee of a limited liability company interest at the time of bringing the action and
(1)At the time of the transaction of which the plaintiff complains; or (2)The plaintiff's status as a member or an assignee of a limited liability company interest had devolved upon the plaintiff by operation of law or pursuant to the terms of a limited liability company agreement from a person who was a member or an assignee of a limited liability company interest at the time of the transaction."[131]
The Trustee must allege that the creditors are members or assignees of the Debtors' LLCs to have standing to bring derivative claims.
The claim for breach of fiduciary duties owed to the creditors fails because the Trustee does not allege that the creditors are assignees or members of the Debtors' LLCs. The creditors of the Debtors' LLC thus lack standing to sue the LLC or its members and directors for breaches of fiduciary duties. The Trustee does not have standing to sue on behalf of the creditors who themselves have no standing.
The Court grants the motion to dismiss, in part, for all breach of fiduciary duty claims owed to debtors in Counts XV-XVI.
7. Claim XVII for an Accounting.
Under Delaware law, a claim for accounting is an equitable remedy tied to fiduciary duties.[132] As it is a remedy, the Trustee must first plead plausibly a claim for breach of fiduciary duty before the Court can address the Trustee's arguments for granting an accounting. Because the Trustee has not pled plausibly a claim for fiduciary duty, Count XVII is dismissed.
*468 8. Claim XVIII for Failure to State a Claim for Disallowance under 11 U.S.C. § 502(d)
The Trustee objects to the allowance of any claims filed by, or on behalf of, OpenGate or any of the Defendants, generally.
Disallowing a claim under Section 502(d) requires a judicial determination that a claimant is liable. A debtor wishing to avail itself of this section's benefits must first obtain a judicial determination on the complaint.[133] Where the debtor "has merely commenced an adversary proceeding," the Court will hold that Section 502(d) is inapplicable.[134] The Trustee has not obtained a judicial determination on the preference complaint-a prerequisite to a claim under Section 502(d). Therefore, The Trustee fails to adequately plead a claim under Section 502(d). Consequently, Claim Nineteen is dismissed.[135]
The Trustee has failed to obtain a judicial determination on either the preference or the fraudulent transfer claims. Claim XVIII is consequently be dismissed.
9. Request to Dismiss Counts with Prejudice
The Defendants ask that the Court grant their Motion to Dismiss and deny the Plaintiff's claims against the Defendants with prejudice. If "[t]he record does not suggest that the Trustee acted in bad faith or with improper motive... the only potential grounds to deny leave to amend are undue delay, futility, and the unfair burden on the opposing party."[136] This is the Trustee's first Complaint. The Trustee can amend the Complaint to meet the pleading requirements for at least some of the claims. The request for dismissal with prejudice is denied except for the claims in Count XVI which are futile.
CONCLUSION
For the reasons set forth herein, the Motion to Dismiss is granted, in part, and denied, in part. The Court denies the motion to dismiss the fraudulent transfer claims in Counts X-XII. The Court grants the motion to dismiss the preferential transfer claims in Count XIV, the fiduciary breach claims in Counts XV, the accounting claims in Count XVII and the claim for a disallowance in Count XVIII. The Court grants the Motion to Dismiss the fiduciary breach claims in Count XVI with prejudice.

The Defendants have explicitly not consented to entries of final orders or judgments by this Court. For this Court to have the authority to enter final orders or judgments, it must have both statutory and constitutional jurisdiction. Statutory jurisdiction is granted by section 157(b)(2). Stern v. Marshall , 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), held that bankruptcy courts lack Article III jurisdiction to issue final orders and judgements on state law claims even if such claims are counterclaims which the bankruptcy courts have statutory jurisdiction over as core proceedings under 28 U.S.C. § 157(b)(2)(C). There is no such challenge here. State claims that adopt the language of Federal claims will be treated as Federal claims and not state claims. As stated above, all of the claims are considered core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (F), and (H).

Adv. Pro. No. 17-50530, Complaint ("Compl. "), D.I. 2, ¶ 1.

Del. Bankr. No. 15-11196 D.I. 52, 2-4.

Compl. ¶ 1.

Del. Bankr. No. 15-11196 D.I. 32 Motion for Joint Administration at ¶ 9.

Compl. at 1-2.

See e.g. , Id. ¶¶ 165, 173, 182, 186.

Id. ¶ 27.

Id.

Id.

Id. ¶ 40.

Id. ¶ 27.

Id. ¶ 11.

Id. ¶¶ 30-31, 33-34.

Id. ¶¶ 5, 27 (emphasis added); while not clear, it seems that the Trustee intended "other senior managers" to mean the Defendants.

Id. ¶¶ 181-83, 186-89.

Id. ¶ 66 (alleging that it was the OpenGate entities directing Debtors to give Defendants a raise.).

Id. ¶¶ 57-59, 60-61, 63, 66-68, 70-76, 83, 87.

See e.g. , Id. ¶¶ 70-76 (Showing that the Complaint conflates whether it was Mr. Jay Yook or OpenGate who caused the Debtors to make an allegedly fraudulent transfer. The same confusion exists throughout the Complaint with OpenGate sometimes referring to every Defendant listed in the Complaint and other times referring to only the OpenGate LLCs).

Id. ¶¶ 85-87.

Id. ¶ 57.

Id. ¶¶ 14, 59.

Id. ¶ 59.

Id. ¶ 58.

Id. ¶ 60.

Id.

Id. ¶ 61.

Id. ¶¶ 61-63.

Id. Exhibit A.

Id. ¶ 64.

Id. ¶ 66.

Id. ¶ 67.

Id. ¶ 65.

Id. Exhibit B. Id. ¶ 68. The total amount of payments the Defendants received was $845,076.29 with Mr. Abrams receiving $245,147.18, Mr. Chaffin receiving $173,119.43, Mr. Mony receiving $278,617.44, and Ms. Thornton receiving $148,192.24. The Trustee lists the dates of the payments in Exhibit B.

Id. ¶ 66. The acceptable date range is from May 29, 2013, to May 29, 2015. The salary payments all occurred between March 12, 2014, and April 8, 2015.

Id. ¶ 70-81:
"[T]here is a possibility that lender may look beyond the form of the document and argue that this is a disguised loan to Fusion, which we anticipate would constitute a breach of one or more of PennySaver's loan covenants. However, given the circumstances, if the advance is returned quickly, and Capital One does not perform any audits in the next six months, it is likely that this arrangement will go largely unnoticed."

Id. ¶ 76.

Id. ¶ 77.

Id. ¶¶ 80-82.

Id. ¶ 80.

Id. ¶¶ 83-84.

Id.

Supra n.22.

Id. ¶¶ 12-13, 56.

Id. ¶¶ 12-13, 17, 38-40, 42-49, 53-56.

Id. ¶¶ 17, 53.

Id. ¶ 39.

Id. ¶ 40.

Fed. R. Bankr. P. 7012(b) adopts Fed. R. Civ. Pro. Rule 12(b)(6) in adversary proceedings.

Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ; Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Id.

Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 ; Twombly , 550 U.S. at 555-56, 127 S.Ct. 1955.

Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 ; Connelly v. Lane Const. Corp. , 809 F.3d 780, 786 (3d Cir. 2016).

Fowler v. UPMC Shadyside , 578 F.3d 203, 210-11 (3d Cir. 2009).

In re Mervyn's Holdings, LLC , 426 B.R. 488, 494-95 (2010) (citing U.S. Express Lines, Ltd v. Higgins , 281 F.3d 383, 388 (3d Cir. 2002) ).

In re FAH Liquidating Corp. , 572 B.R. 117, 129 (Bankr. D. Del. 2017) ("Both California and Delaware have adopted the UFTA. The elements to state a claim for constructive fraud under the UFTA mirror the elements required to state a claim for constructive fraud under § 548(a)(1)(A), except that both California's and Delaware's UFTA extends the lookback period such that a cause of action must be brought within four years after the transfer was made.").

Id.

Compl. ¶ 148.

Id. ¶ 162.

In re Pillowtex Corp., 427 B.R. 301, 310 (Bankr. D. Del. 2010) ("...courts in this district have held that claims of constructive fraud (i.e., fraudulent transfers) are evaluated using Fed. R. Civ. Pro. 8(a)(2)"); In re Mervyn's Holdings, LLC , 426 B.R. 488, 495 (Bankr. D. Del. 2010) ("Furthermore, this Court takes the view that claims of constructive fraud, i.e. fraudulent transfers, are evaluated using Rule 8(a)(2).").

In re AgFeed USA, LLC , 546 B.R. 318, 336 (Bankr. D. Del. 2016) ("A claim of constructive fraud, however, need not allege the common variety of deceit, misrepresentation, or fraud in the inducement ... because the transaction is presumptively fraudulent and all that need be alleged is that the conveyance was made without fair consideration while the debtor was functionally insolvent."); Mervyn , 426 B.R. at 495 ("A fraudulent transfer complaint 'need only set forth facts with sufficient particularity to apprise the defendant fairly of the charges made against him.").

Mervyn , 426 B.R. at 495 ; AgFeed , 546 B.R. at 336 (noting that when pleading a constructive fraud claim, "the Trustee must do more than simply allege the statutory elements of a constructive fraud action.").

AgFeed , 546 B.R. at 337 (Bankr. D. Del. 2016) ("Here, the complaint identifies the date, amounts, source and transferee of each of the transfers...At this stage of the proceedings, the Court concludes that the facts alleged by the Trustee are sufficient to support a claim for constructive fraud under section 548(a)(1)(B) ); In re DVI , No. 03-12656, 2008 WL 4239120 at 9 (Bankr. D. Del. 2008) (finding the complaint sufficient because the Trustee identified the transfer by date and face amount and alleged that it was for no consideration, and thus less than reasonably equivalent value); Mervyn , 426 B.R. at 495 (finding constructive fraud claim adequately pleaded where the Debtor specified facts identifying the property and dates involved in the transaction, the value of the transfers made, the amount of money transferred, the source of the funds, and the transferee).

11 U.S.C. § 548(a)(1)(B).

In re Green Field Energy Servs., Inc. , No. 13-12783, 2015 WL 5146161, at 8 (Bankr. D. Del. 2015) ("Given the wide number of variables to consider, and the less stringent pleading requirements of Rule 8(a)(2) to constructive fraud claims, "[t]he issue of 'reasonably equivalent value' requires a factual determination that cannot be made on a motion to dismiss."); In re Charys Holding Co., Inc. , 443 B.R. 628, 638 (Bankr. D. Del. 2010) ("reasonably equivalent value is a fact-intensive determination that typically requires testing through the discovery process."); In re DBSI, Inc. , 445 B.R. 344, 349 (Bankr. D. Del. 2011) ("insolvency is generally a factual determination not appropriate for a motion to dismiss.").

In re FAH Liquidating Corp. , 572 B.R. 117, 127 (Bankr. D. Del. 2017).

Id.

Supra n.57.

In re DBSI, Inc., 477 B.R. 504, 512-13 (Bankr. D. Del. 2012).

In re APF CO., 274 B.R. 634, 639 (Bankr. D. Del. 2001) ("When analyzing the sufficiency of a complaint for purposes of Rule 12(b)(6), courts do not generally require a trustee to plead the existence of an unsecured creditor by name, although the trustee must ultimately prove such a creditor exists."); 11 U.S.C. § 544(b)(1) ; Supra n.57.

Del. Code Ann. tit. 6, § 1304 (West) only differs in one word from Cal. Civ. Code § 3439.04 (West) using the word "fraudulent" instead of the word "voidable" in the sentence "[a] transfer made or obligation incurred by a debtor voidable as to a creditor..." the remainder of the statutes are identical.

Del. Code Ann. tit. 6, § 1304 (West).

Supra n.57.

In re Opus E., LLC , 528 B.R. 30, 82 (Bankr. D. Del. 2015) ; In re Nat'l Serv. Indus., Inc. , No. 12-12057, 2015 WL 3827003, at 5 (Bankr. D. Del. 2015) (considering both Delaware state law and Bankruptcy Code constructively fraudulent transfers together); In re American Business Financial Services, Inc. , 471 B.R. 354 (Bankr. D. Del. 2012) ; Supra n.72.

Id. ¶¶ 88, 96, 104, 112, 120, 125, 135, 140, 145.

Case No. 17-50530 D.I. 10 p. 19-20.

FAH , 572 B.R. at 127 ; In re Qimonda Richmond, LLC , 467 B.R. 318, 327 (Bankr. D. Del. 2012) ("The Court finds that the issue of 'reasonably equivalent value' requires a factual determination that cannot be made on a motion to dismiss."); DVI , 2008 WL 4239120 at 9 ; In re Charys Holding Co. , 443 B.R. 628, 638 (Bankr. D. Del. 2010).

In re AgFeed USA, LLC , 558 B.R. 116, 130 (Bankr. D. Del. 2016) (Shannon, J.).

Indus. Enters. of Am., Inc. v. Mazzuto (In re Pitt Penn Holding Co.) , 484 B.R. 25, 53-54 (Bankr. D. Del. 2012).

Id.

See Compl. ¶¶ 12-13, 17, 38-40, 42-49, 53-56.

Id.

Supra n.66.

In re Roblin Industries, Inc. , 78 F.3d 30, 38 (2d Cir. 1996).

Supra nn.57, 72.

Supra n.57.

Supra nn.57, 72.

BFP v. Resolution Trust Corp. , 511 U.S. 531, 540-41, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) ; In re DiLoreto , 266 Fed. Appx. 140, 144 (3d Cir. 2008) ; In re Green Field Energy Services, Inc. , No. 13-12783, 2015 WL 5146161 at 6 (quoting In re Hechinger Inv. Co. of Del. , 327 B.R. 537, 551 (D. Del. 2005).

See OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.), 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud."). See also Pardo v. Gonzaba (In re APF Co.), 308 B.R. 183, 188 (Bankr. D. Del. 2004). Contra AstroPower Liquidating Trust v. Xantrex Techn. Inc. (In re AstroPower Liquidating Trust), 335 B.R. 309, 333 (Bankr. D. Del. 2005) (rejecting application of Rule 9(b) to a constructive fraudulent transfer claim); See also , supra nn.60-61.

Fed. R. Civ. Pro. 9(b) ; Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

In re APF Co. , 308 B.R. at 188 (quoting In re MacGregor Sporting Goods, Inc. , 199 B.R. 502, 514-15 (Bankr. D. N.J. 1995). Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's Furniture) , 175 B.R. 560, 567-68 (Bankr. E.D. Pa. 1994) (Because of the Trustee's "inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.").

Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.) , 405 B.R. 527, 545 (Bankr. D. Del. 2009) ; accord Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.) , 473 B.R. 525, 565 (Bankr. D. Del. 2012).

In re AgFeed USA, LLC , 546 B.R. 318, 337 (Bankr. D. Del. 2016) (Shannon, J.).

Compl. ¶¶ 37-41.

Id. ¶ 67.

In re AgFeed , 546 B.R. at 337.

Adv. Pro. No. 17-50530 D.I. 10, pp. 22-23.

Id. The Defendants use Carson Optical Inc. v. eBay Inc. , 202 F.Supp.3d 247, 255 (E.D.N.Y. 2016) ("[A] court is neither obligated to reconcile the pleadings with the other matter nor accept the allegation in the pleadings as true in deciding a motion to dismiss.") as grounds to dismiss the Trustee's allegedly inconsistent allegations. Contrast Complaint ¶¶ 30-34 (alleging that the Defendants did no material amount of work for their salary) with Complaint ¶¶ 182-83, 188-190 (alleging that the Defendants "knowingly caused the Debtors to make the Fraudulent transfers for the benefit of, OpenGate or the Defendants to the detriment, and in contravention, of the Debtors' interests."). However, the Trustee argues that the allegations are not inconsistent-instead, they are alternative theories of liability. For instance, the Trustee argues that to the extent that the transfers were not gratuitous under the fraudulent transfer theory, and they were made in satisfaction of some obligation on the part of the Debtors, then the value was not reasonably equivalent to the amount of the transfer. See D.I. 25 Plaintiff's Omnibus Brief in Opposition at pp. 35-37. The Court must read the Complaint in the light most favorable to the Trustee. The Trustee has adequately argued that the Complaint is not inconsistent.

Adv. Pro. No. 17-50530 D.I. 25 at 36-37.

In re Valley Media, Inc. , 288 B.R. 189, 192 (Bankr. D. Del. 2003) (citing Posman v. Bankers Trust Co. , No. Adv. A-97-245, 1999 WL 33742299 at 2 (Bankr. D. Del. July 28, 1999) ). See also In re THQ Inc. , No. 12-13398, 2016 WL 1599798, at *3 (Bankr. D. Del. 2016) (citing In re Valley Media, Inc. , 288 B.R. 189, 191 (Bankr. D. Del. 2003) ). But contra In re Oakwood Homes Corp. , 340 B.R. 510, 521-22 (Bankr. D. Del. 2006) (refusing to follow In re Valley Media ) with In re Tweeter Opco , 452 B.R. 150, 154 (Bankr. D. Del. 2011) (clarifying that the heightened pleading standard this Court used prior to Twombly and Iqbal should be reinstated and that cases such as Oakwood Homes decided prior to Twombly and Iqbal "may no longer be good law.").

In re Tweeter Opco , 452 B.R. 150, 154 (Bankr. D. Del. 2011) (Walrath, J.) ("Because there is more than one debtor in this case, the Court concludes that the Trustee must identify the transferor precisely by name.").

Id.

The "insider" discussion can be ignored because the Complaint has failed to meet the pleading requirements required in this Court.

Compl. ¶ 181.

D.I. 10 pp. 9-16.

Id. at 13-14.

The Trustee and Defendant argue over the applicability of In re USACafes, L.P. Litig. , 600 A.2d 43 (Del. Ch. 1991) to the case at hand.

No. 15-11196 Motion for Joint Administration D.I. 32 p. 4 ¶ 9; See also No. 15-11196 Order Granting the Motion D.I. 52 p. 3-4.

Supra n.6.

Edgar v. MITE Corp. , 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs-matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders-because otherwise a corporation could be faced with conflicting demands."); Fedders , 405 B.R. at 544.

In re Tropicana Entm't, LLC , 520 B.R. 455, 470 (Bankr. D. Del. 2014).

Del. Code Ann. tit. 6, § 18-1101(c) (West).

Del. Code Ann. tit. 6, § 18-1104 (West) ; In re FAH Liquidation Corp. , 581 B.R. 98, 112 (Bankr. D. Del. 2017) ("Delaware law provides that 'in the absence of a contrary provision in the LLC agreement,' LLC managers and members owe 'traditional fiduciary duties of loyalty and care' to each other and to the company.' " (quoting Kelly v. Blum , Civ. A. No. 4516-VCP, 2010 WL 629850, at 10 (Del. Ch. 2010) (quoting Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC , No. 3658-VCS, 2009 WL 1124451, at 8 n.33 (Del. Ch. 2009) ) ).

Feeley v. NHAOCG, LLC , 62 A.3d 649, 662-63 (Del. Ch. 2012) ("As with a limited partnership, a "person" may owe fiduciary duties depending on whether that person controls a manager of the LLC or otherwise has a fiduciary relationship to the LLC. The phrase '[t]o the extent that' recognizes these differing possibilities without implying that all members or all persons necessarily always or never owe default fiduciary duties.") (quoting Del. Code Ann. tit. 6, § 18-101(7) (West) ). This case is derivative of In re USACafes L.P. Litig. , 600 A.2d 43 (Del. Ch. 1991) and only applies to the fiduciary duty of loyalty.

Lewis v. AimCo Properties, L.P. , No. CV 9934-VCP, 2015 WL 557995, at 7 (Del. Ch. 2015) ; See also N. Am. Steel Connection, Inc. v. Watson Metal Prod. Corp. , 515 F. App'x 176, 182-83 (3d Cir. 2013) (Stating that if members of an LLC agree that a party may exercise authority over the LLC or the party in fact exercised management authority over the LLC, then a reasonable jury might find that that party was in a fiduciary relationship with member(s) of the LLC.)

Feeley , 62 A.3d at 669, 671 (Del. Ch. 2012).

Id. at 671.

USACafes , 600 A.2d (Del. Ch. 1991).

Bay Center Apartments , 2009 WL 1124451 (Del. Ch. 2009) ("Importantly, the defendants do not challenge the general applicability of this doctrine in the LLC context.").

Cargill, Inc. v. JWH Special Circumstance LLC , 959 A.2d 1096, 1121-1122 (Del. Ch. 2008).

Id.

Id. at 1122.

USACafes was extending fiduciary duties to the directors of the General Partner of a Limited Partnership. USACafes , 600 A.2d at 47-49 (Del. Ch. 1991). The defendant in Feeley was the managing member of LLC1, which was, in turn, the managing member of LLC2. Feeley , 62 A.3d at 669, 671 (Del. Ch. 2012). The defendant in Cargill was the parent LLC of the controlled LLC. Cargill, Inc. , 959 A.2d at 1099. In Cargill , LLC1 wholly owned LLC2 who was the managing owner of LLC3 and LLC1 was found to have controlled LLC3 where it made a binding contractual decision for LLC3 preventing it from protecting itself against unacceptable risks. Id. at 1099, 1121-22. Factors that lent support to this finding include (1) the fact that LLC3's employees significantly overlapped with LLC2's employees and overlapped to a lesser extent with LLC1 s employees (2) LLC1 causing LLC3 to assign a futures agreement and (3) LLC3 employees being compensated by LLC2 or LLC3 and not LLC1. Id.

In re Conex Holdings, LLC , 514 B.R. 405, 414 (Bankr. D. Del. 2014).

CML V, LLC v. Bax , 28 A.3d 1037, 1039 (Del. 2011).

N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla , 930 A.2d 92, 101-02 (Del. 2007) ; see also, Trusa v. Nepo , 2017 WL 1379594 at 4-5 (Del. Ch. April 13, 2017).

Gheewalla , 930 A.2d at 101-02.

Id.

Trusa v. Nepo , 2017 WL 1379594 (Del. Ch. 2017).

Del. Code Ann. tit. 6, § 18-1002 (West).

In re USDigital, Inc. , 443 B.R. 22 (Bankr. D. Del. 2011) (quoting In re Stone & Webster, Inc., 2009 WL 426118, at 5 (Bankr. D. Del. 2009) (citing Albert v. Alex Brown Mgmt. Servs., Inc., 2005 WL 2130607, at 11 (Del. Ch. 2005) ) ).

Quoting In re Ultimate Acquisition Partners, LP , No. 11-10245, 2012 WL 1556098, at 3 (Bankr. D. Del. 2012) (stating that a debtor wishing to avail itself of the benefits of § 502(d) must first obtain a judicial determination on the preference complaint, and denying a Trustee a § 502(d) claim where he had not yet obtained any judicial determination of opposing party's liability); In re Lids Corp. , 260 B.R. 680, 684 (Bankr. D. Del. 2001) (denying claim for disallowance where debtor who had only commenced an adversary proceeding to recover an alleged preference from creditor but had not yet obtained a judicial determination on its complaint, and thus could not claim disallowance under § 502(d) ).

Quoting In re Lids Corp. , 260 B.R. 680, 684 (Bankr. D. Del. 2001).

In re BMT-NW Acquisition, LLC , 582 B.R. 846, 866-67 (Bankr. D. Del. 2018).

Id.